UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEAN WRIGHT,

                                       Plaintiff,

                                       DECISION AND ORDER

                                       05-CV-6052L

         v.

T. DIXON, et al.,

                                       Defendants.
_____

Plaintiff, Dean Wright, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that defendants, all of whom at all relevant times were DOCS employees, violated his constitutional rights in connection with a disciplinary hearing on a misbehavior report issued against plaintiff in 2004. Defendants have moved for summary judgment. Defendants' motion is granted, and the complaint is dismissed.

**BACKGROUND**

The relevant facts, which are not in dispute, *see* Dkt. #18 at 2 (plaintiff's statement that he "do[es] not contest the facts as presented in the defendants' motion for summary judgment, rule 56

statement"), are as follows. On May 16, 2004, Correctional Officer D. Spencer issued a misbehavior report charging plaintiff with smuggling and possession of a weapon at 8:55 p.m. that same day. Specifically, the report stated, "On the above date and time [*i.e.*, May 16 at 8:55 p.m.] I CO Spencer ... received Inmate Wright" at the reception area for the strip-frisk room. Dkt. #9-1 at 7. The report stated that Wright "claimed to have placed [a weapon] in his rectum/anus." *Id.* The report said that Wright was "given approx. one hour and twenty five minutes to retrieve said weapon," but that "Wright stated he could not get the weapon out." *Id.* According to the report, "Wright was then moved to ... special watch status." *Id.* After Wright had left the strip-frisk room, Spencer searched the room and, on a door ledge, found a folding knife, which had not been there before Wright had entered the room. *Id.*

According to the report, then, Wright arrived at the strip-frisk area from his cell at 8:55 p.m., stayed there for roughly 85 minutes, and was then moved to a special-watch cell. That would mean that he arrived at the special-watch area at about 10:20 p.m.

A disciplinary hearing on these charges began on May 26, 2004, before Captain Thomas Dixon. At the hearing, plaintiff attempted to show, through log entries made by correctional officers, that he was already in a special-watch cell at 8:55 p.m. on May 16, and that he remained there for several hours afterward. *See* Dkt. #9-1 at 23-24. If that were so, then plaintiff could not have been received at the strip-frisk room at 8:55, as indicated in the misbehavior report. Plaintiff argued to the hearing officer that the "charges should be dismissed" because plaintiff had established "everything that [he] was doing from 8:50 that day unless you're saying that this log is not right or that [the] misbehavior report is not right ... ." Dkt. #9-1 at 25.

Dixon responded that he was going to keep the relevant time records and that he "was curious about something." Dkt. #9-1 at 25. He then adjourned the hearing.

The hearing resumed on June 3, 2004. After one of the officers who was involved in the underlying events had testified, Dixon stated that because of the discrepancy concerning the time of those events, he believed that "Officer Spencer needs to be called the author of the misbehavior report ... ." Dkt. #9-1 at 28. There followed a brief adjournment, and the hearing resumed later that day, with Officer Spencer being called as a witness.

When Dixon asked Spencer about the "8:55 p.m." notation on the misbehavior report, Spencer stated that, contrary to what the report seemed to indicate, that was not the time that plaintiff had been received in the strip-frisk room, but the "time [that] the weapon [was] discovered in the strip frisk room." Dkt. #9-2 at 6. After reviewing a log book entry, Spencer testified that plaintiff had actually been received in the strip-frisk room area around 7:25 p.m. Dkt. #9-2 at 6. Spencer added that had this been brought to his attention at the time he was filling out the misbehavior report, he would have corrected the statement in the report indicating that plaintiff had been received in the strip frisk room at 8:55. Dkt. #9-2 at 7.

Plaintiff again objected, citing 7 N.Y.C.R.R. § 251-3.1(c)(1), which states that "[t]he misbehavior report shall include ... a written specification of the particulars of the alleged incident of misbehavior involved." He argued that he had not gotten "a misbehavior report that accurately describes the incident prior to the hearing so as [plaintiff] could prepare a defense ... ." Dkt. #9-2 at 8.

Dixon overruled plaintiff's objection, stating,

- 3 -

> [T]he time ... of the misbehavior report ... states 8:55 and that is when Mr. Spencer discovered the incident discovered the misconduct.  In the body of the misbehavior report it states, "[O]n the above date and time I C.O. Spencer while working reception 2nd received Inmate Wright."  That is an error.  It is a correctable error, has been corrected and has been established that what time Mr. Wright came on the unit Mr. Wright knew ... what time he came on the unit by presenting to this hearing officer as to mistake.  I felt that he had ample opportunity to prepare [a] defense in this matter ... .  [The] misbehavior report stands as I stated.

Dkt. #9-2 at 8.

At the conclusion of the hearing, Dixon found plaintiff guilty of the charges against him. Noting that this was plaintiff's third weapon charge in seven years, as well as the type of weapon involved, Dixon imposed a penalty of 36 months' confinement to the Special Housing Unit ("SHU"). Dkt. #9-1 at 34.  On appeal, Keith F. Dubray, Acting Director Special Housing/Inmate Disciplinary Program, reduced the penalty to 24 months.  Dkt. #9-1 at 40.  Donald Selsky, Director of Special Housing/Inmate Disciplinary Program, denied plaintiff's request for reconsideration.  Dkt. #9-1 at 50.

In this action, plaintiff has sued Dixon, Dubray and Selsky.  He alleges that his right to due process was violated by Dixon's refusal to grant plaintiff an adjournment after Spencer's testimony that the time of the incident as stated on the misbehavior report was incorrect.  Dubray's and Selsky's liability is premised upon their failure to remedy this alleged violation by reversing Dixon's finding of guilt.  Plaintiff seeks $1 million in damages.

## DISCUSSION

**I. Plaintiff's Due Process Rights Were not Violated**

In general, "due process requires that a prisoner be given specific factual notice of the charged misbehavior for which he faces discipline, a summary of the substance of any adverse evidence reviewed *ex parte* by the hearing officer, and a statement of reasons for the discipline imposed." *United States v. Abuhamra*, 389 F.3d 309, 326 (2d Cir. 2004) (citing *Sira v. Morton*, 380 F.3d 57, 70, 74-76 (2d Cir. 2004)). The Court of Appeals for the Second Circuit has described these requirements as "minimal." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

In *Sira*, the Second Circuit held that a prisoner had presented a viable due process claim of inadequate notice based in part on inaccurate information in a misbehavior report concerning the time and date of the underlying incident (which was referred to as the "Y2K Strike"). The incident date was marked in the report as January 19, 2000, whereas the body of the report, and the evidence at the subsequent hearing, indicated that the relevant events had occurred around January 1 or even earlier. The hearing officer agreed with the inmate that the incident date on the report was erroneous, but concluded that the inmate had nonetheless received adequate notice of the approximate date and time of the alleged misconduct.

On appeal from the district court's denial of the DOCS defendants' motion for summary judgment, the Court of Appeals for the Second Circuit agreed with the district court that the plaintiff had been denied due process based on the inadequacy of the notice of the charges against him.[1] The

---

[1]Although a denial of summary judgment is ordinarily not a final judgment from which an appeal will lie, the court of appeals in *Sira* had jurisdiction over the appeal under 28 U.S.C. § 1291, pursuant to the exception to the general rule that applies when government officials seek summary judgment on the ground of qualified immunity, and the district court denies the motion as a matter of law. 380 F.3d at 66.

court stated that "to the extent the report identifies the date and time of the incident as January 19, 2000, at 10:15 a.m., the document is affirmatively misleading," because the evidence at the hearing showed that "that date and time correspond to [the reporting officer's] filing of the disciplinary charges, not to any particular misconduct by Sira." 380 F.3d at 70-71.

The court also stated that viewing the evidence in the light most favorable to the plaintiff, he could reasonably "have interpreted the report to charge Sira with misconduct on January 19 in attempting to rekindle the Y2K strike." *Id.* at 71. The court added that the plaintiff apparently had so interpreted the report, since "on the first day of the disciplinary hearing, he sought to document his whereabouts on the morning of [January 19]." *Id.*

*Sira*, however, is readily distinguishable from the instant case, in two material respects. First, in *Sira*, the error concerning the date and time of the incident was of a far greater magnitude than the mistake here. In the case at bar, the misbehavior report misstated the time of the incident by about 90 minutes. In *Sira*, the report was off by nearly three weeks.

Second, the report in *Sira* was not only defective with respect to the time and date of the incident, but in a number of other respects as well. In fact, as the court of appeals put it, the report was "devoid of specific facts to support the otherwise conclusory allegation that [the plaintiff] had 'urged ..., organized ..., and threatened inmates to participate' in the Y2K strike." *Id.* at 70.

The court held that *Sira* was therefore distinguishable from *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999), in which an inmate was charged with threatening to kill three corrections officers but where hearing evidence revealed only non-homicidal threats. *Id.* at 108. In rejecting a due process challenge, the court in *Kalwasinski* explained that "[t]he discrepancy as to the precise

nature of the threatened harm did not represent a failure of specificity that would impair Kalwasinski's ability to prepare his defense." *Id.*

Rejecting the defendants' reliance on *Kalwasinski*, the *Sira* court pointed out that in *Kalwasinski*, "[t]he noted variance between charge and proof arose in the context of an otherwise detailed misbehavior report," which charged specific conduct on a specific (and correct) date, at a specific site, under specific circumstances. The officers involved were also identified by name and rank. *Sira*, 380 F.3d at 71 (citing *Kalwasinski*, 201 F.3d at 105). The court went on to state that

> Sira's situation is not at all comparable. His misbehavior report does not simply misidentify the incident date and time. It provides no notice as to the specific site or sites of his misconduct; it does not indicate the words or actions he employed in purportedly urging, organizing, or threatening inmates to participate in the Y2K strike; and it identifies no inmates toward whom his actions were directed. Thus, unlike *Kalwasinski*, this is not a case where one discrepancy in a misbehavior report can be excused because other details provided adequate notice of the conduct at issue.

*Id.* (citing *Quinones v. Ricks*, 288 A.D.2d 568, 568-69 (2d Dep't 2001) (noting that failure to include specific date in misbehavior report may be excused if the report otherwise provides sufficient details to permit the inmate to fashion a defense)). "From the notice he was given," the court concluded, "Sira could only guess" what he was charged with doing, and when and where the alleged misconduct took place. *Id.* at 71-72.

The facts before me are much more comparable to those in *Kalwasinski* than in *Sira*. While the reported time of the incident was off by about 90 minutes, the report was otherwise sufficiently detailed to put plaintiff on notice of the misconduct alleged. Plaintiff was therefore not entitled to an adjournment following Spencer's testimony clarifying when the relevant events occurred.

Although Wright, like the plaintiff in *Sira*, initially attempted to prove at the hearing that he could not have engaged in the alleged misconduct at the time stated in the report, the erroneous statement concerning the time of the incident, when viewed in combination with the other allegations in the body of the report, was not so gross as to mislead a reasonable person about the substance of the charges against him, or to leave plaintiff in the dark about the particulars of the misconduct alleged. The report set forth the location of all of the relevant events, the name of the officer who was present when Wright arrived at the strip-frisk room and who discovered the weapon, and–though the time was off by an hour and a half–the report correctly indicated that these events occurred during the evening of May 16, 2004.

As the court observed in *Sira*, while "the notice required by due process is no empty formality," *id.* at 70, the Constitution does not "demand[] notice that painstakingly details all facts relevant to the date, place, and manner of charged inmate misconduct"; rather, what is required is "sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense." *Id.* at 72. The misbehavior report here more than met that standard. Defendants are therefore entitled to summary judgment.

**II. Defendants Are Entitled to Qualified Immunity**

Even if plaintiff's right to due process had been violated as a result of inadequate notice of the charges against him, defendants would still be entitled to summary judgment on the ground of qualified immunity. To establish qualified immunity, a defendant must show "either '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the

defendant to believe that his action did not violate such law.'" *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (quoting *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)).

The disciplinary hearing in this case concluded on June 3, 2004. Although the Second Circuit stated in *Sira* (which was issued in August 2004) stated that "for more than two decades before the filing of Sira's misbehavior report, the law has recognized an inmate's due process right to receive advance written notice of the disciplinary charges against him sufficient to permit him 'to marshal the facts in his defense,'" 380 F.3d at 73 (quoting *Wolff*, 418 U.S. at 564), and that prior Second Circuit decisions had "emphasized that vague, conclusory allegations are inadequate to this purpose," *id.* (citing *Benitez v. Wolff*, 985 F.2d 662, 665 (1993)), nothing in *Sira*, or in any other Supreme Court or Second Circuit decisions, has ever indicated that a relatively modest inaccuracy or ambiguity concerning the time of an alleged incident, such as the one in this case, could, without more, render an inmate's notice of charges constitutionally inadequate.

Indeed, the *Sira* court noted that it had "frequently upheld indictments that 'do little more than ... track the language of the statute charged,' ... when they also state, *at least approximately*, 'the time and place' of the alleged crime." 380 F.3d at 73 (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)) (emphasis added). In holding that the defendants in *Sira* were not entitled to qualified immunity, the court noted the many defects in Sira's misbehavior report, including the fact that "it did not provide even minimal notice of the time or place of the charged conduct." *Id.* at 74. That is far from what occurred here, and defendants' actions therefore did not violate clearly established law, nor should they have believed that they had done so.

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #12) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 19, 2006.